UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMBER LANCASTER,
et al.,

      Plaintiffs,

v.                         Case No.: 8:17-cv-634-T-33JSS

THE BOTTLE CLUB, LLC d/b/a
EYZ WIDE SHUT II; EYES WIDE
SHUT, LLC d/b/a EYZ WIDE SHUT;
BYOB CLUB, INC.; ANDREW HARROW;
and SUSAN HARROW,

      Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants Susan and Andrew Harrow's Motion to Dismiss First Amended Complaint (Doc. # 41), filed on June 20, 2017, and Defendant Bottle Club, LLC's Motion to Dismiss Counts I and VIII (Doc. # 42), filed on June 22, 2017. Plaintiffs responded on July 3, 2017. (Doc. ## 44-45). For the reasons that follow, the Motions are denied.

**I.**   **Background**

The twenty Plaintiffs are professional models and/or actresses living across the country and working "as independent contractors for different agents or entities." (Doc. # 38 at ¶¶ 59, 64). Each "earns a living by promoting

her image and likeness to select clients, commercial brands, media and entertainment outlets, as well as relying on her reputation and own brand for modeling, acting, hosting, and other opportunities." (Id. at ¶ 59). Each Plaintiff has a history of successfully selling her image and many have substantial followings on social media, with "the number of online followers [being] a strong factor in determining the model's popularity, and, thus, earning capacity." (Id. at ¶¶ 69, 80, 91, 102, 113, 124, 135, 146, 157, 168, 179, 191, 202, 213, 224, 235, 246, 257, 268, 279).

For example, Plaintiff Amber Lancaster is an actress and model, who has "been featured in numerous spreads and fashion features in magazines, including *Maxim*, *US Weekly*, *People*, *Stylewatch*, *Life & Style* and *Star*." (Id. at ¶ 69). Lancaster "has over 62,000 Instagram followers, 80,000 Facebook followers, and 52,000 Twitter followers." (Id.).

Because reputation is critical in the modeling industry, Plaintiffs' "[e]ndorsing, promoting, advertising or marketing the 'wrong' product, service or corporate venture, or working in or being affiliated with a disreputable industry can severely impact Plaintiffs' careers by limiting or foreclosing future modeling or brand endorsement opportunities." (Id. at ¶ 67). For that reason, Plaintiffs

"vet" potential professional engagements to "determin[e] whether the individual or entity seeking a license and release of a model's [i]mage is reputable, has reputable products or services, and, through affiliation therewith, would either enhance or harm a model's stature or reputation." (Id. at ¶¶ 58, 66). Plaintiffs' "reputational information is used in negotiating compensation[,] which typically turns on the work a model is hired to do, the time involved, travel and how her image is going to be used." (Id. at ¶ 66). "[T]o protect her reputation and livelihood, Plaintiffs and/or their agents carefully and expressly define the terms and conditions of use" of Plaintiffs' images. (Id.). "[T]he entire negotiated deal is reduced to and memorialized in an integrated, written agreement." (Id.).

Defendants Andrew and Susan Harrow are officers and managers of various corporate entities: Defendants the Bottle Club, LLC, which does business as Eyz Wide Shut II; Eyes Wide Shut, LLC, which does business as Eyz Wide Shut; and BYOB Club, Inc. (Doc. # 38 at ¶¶ 41-42). Together, they run Eyz Wide Shut — "a swingers club that engages in the business of entertaining its patrons with alcohol, music, hotel rooms, and several amenities including a nightclub." (Id. at ¶ 52). The Harrows "had operational and managerial control and

responsibility over the business operations of, and decision-making authority for Eyz Wide Shut, including decisions relating to Eyz Wide Shut's promotional, advertising, marketing and endorsement activities." (Id. at ¶ 51).

Defendants maintain a website for Eyz Wide Shut and are active on social media, "through which they advertise their businesses, events, and parties and frequently and continuously post explicit and lewd imagery to depict sex acts performed at Eyz Wide Shut." (Id. at ¶ 43). Defendants' advertising and marketing "occur in and are targeted to interstate commerce" because "Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States" using the internet, "social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Eyz Wide Shut events." (Id. at ¶ 302).

In promoting Eyz Wide Shut, Defendants used each Plaintiff's image at least once "in various marketing and promotional mediums [] such as advertising, on various social media accounts, as coupons, and for branding purposes." (Id. at ¶¶ 72, 83, 94, 105, 116, 127, 138, 149, 160, 171, 183, 194, 205, 216, 227, 238, 249, 260, 271, 282). Plaintiffs were

never hired or contracted by Defendants for use of their images, Defendants did not seek Plaintiffs permission to use their images, and Plaintiffs were never paid or offered payment for the use of their images. (Id. at ¶¶ 73-77, 84-88, 95-99, 106-10, 117-21, 128-32, 139-43, 150-54, 161-65, 172-76, 184-88, 195-99, 206-10, 217-21, 228-32, 239-43, 250-54, 261-65, 272-76, 283-87).

According to Plaintiffs,

Defendants' false advertising . . . did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or were otherwise affiliated with Eyz Wide Shut, endorsed Defendants' businesses, Eyz Wide Shut or Eyz Wide Shut events and activities, or consented to or authorized Defendants' usage of Plaintiffs' [i]mages in order to advertise, promote, and market Defendants' businesses or Eyz Wide Shut events and activities.

(Id. at ¶ 301). As a result, "Plaintiffs have sustained injuries to their [i]mages, brands and marketability due to their affiliation with Eyz Wide Shut." (Id. at ¶ 13).

The Harrows "personally participated in the decision making of the creation of the subject advertisements that were published on Defendants' website and social media pages and actually authorized the acts of false advertising and image misappropriation for commercial benefit." (Id. at ¶¶ 45, 48).

After learning about the unauthorized use, Plaintiffs sent Defendants a cease and desist and a demand letter on December 8, 2015. (Id. at ¶ 290). But Defendants "failed and refused to compensate Plaintiffs for the unauthorized use of their images." (Id. at ¶ 295).

Then, on March 16, 2017, Plaintiffs initiated this action. (Doc. # 1). After a motion to dismiss was filed (Doc. # 34), Plaintiffs filed an Amended Complaint on June 6, 2017. (Doc. # 38). In the Amended Complaint, Plaintiffs named additional corporate Defendants, BYOB Club, Inc., and Eyz Wide Shut, LLC. The Amended Complaint asserts the same claims for each Plaintiff; namely, false advertising and false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), right of publicity (unauthorized misappropriation of name/likeness) under section 540.08, Fla. Stat., a common law claim for right of publicity (unauthorized misappropriation of name or likeness), Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, civil theft under sections 812.014 and 772.11, Fla. Stat., unjust enrichment, and conversion. (Id.). As of this Order, BYOB Club, Inc. and Eyz Wide Shut, LLC, have not yet appeared.

The Harrows filed their Motion to Dismiss the Amended Complaint on June 20, 2017. (Doc. # 41). The Bottle Club's

6

Motion to Dismiss Counts I and VIII followed on June 22, 2017.
(Doc. # 42). Plaintiffs responded to both Motions on July 3,
2017. (Doc. ## 44-45). The Motions are ripe for review.

## II.  Legal Standard

On a motion to dismiss, this Court accepts as true all
the allegations in the complaint and construes them in the
light most favorable to the plaintiff. Jackson v. Bellsouth
Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further,
this Court favors the plaintiff with all reasonable
inferences from the allegations in the complaint. Stephens v.
Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th
Cir. 1990)(stating "[o]n a motion to dismiss, the facts stated
in [the] complaint and all reasonable inferences therefrom
are taken as true"). However:

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal
citations omitted). Courts are not "bound to accept as true
a legal conclusion couched as a factual allegation." Papasan
v. Allain, 478 U.S. 265, 286 (1986). Furthermore, "[t]he scope

7

of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. Analysis

The Harrows and the Bottle Club argue that Plaintiffs have failed to state claims for false advertising or false endorsement under the Lanham Act. (Doc. # 41 at 7-13; Doc. # 42). The Harrows also argue that Plaintiffs have failed to plead a basis for their individual liability for all claims. (Doc. # 41 at 3-6). The Court will address each argument in turn.

### A.    Claims under the Lanham Act

Under the Lanham Act,

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her

8

> or another person's goods, services, or
> commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1384 (2014). Plaintiffs bring claims for false advertising and false association or endorsement.

### 1. **False Advertising**

To show a defendant engaged in false advertising, a plaintiff must plead that

(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement.

Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Order of Saint John of Jerusalem, Knights of Malta, Ecumenical Order, 702 F.3d 1279, 1294 (11th Cir. 2012).

9

Thus, while both false advertising and false endorsement claims require as a jurisdictional predicate that the mark at issue was "use[d] in commerce," false advertisement claims also require as a substantive element that the misrepresented service affects interstate commerce. 15 U.S.C. § 1125(a)(1). Defendants only argue that Plaintiffs have failed to allege the substantive interstate commerce element of their false advertisement claims. (Doc. # 41 at 7-9; Doc. # 42 at 3-5).

The word "commerce" is defined for purposes of the Lanham Act as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The Supreme Court has "identified three broad categories of activity that Congress may regulate under its commerce power": (1) "Congress may regulate the use of the channels of interstate commerce"; (2) "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and, (3) "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, . . . , i.e., those activities that substantially affect interstate commerce." United States v. Lopez, 514 U.S. 549, 558-59 (1995).

Indeed, "[i]t is well settled that as defined 'commerce' includes any intrastate transaction which 'affects' interstate commerce." Shatel Corp. v. Mao Ta Lumber & Yacht Corp., 697 F.2d 1352, 1356 (11th Cir. 1983). "Commerce within the power of Congress to control 'is not confined to transportation from one State to another, but comprehends all commercial intercourse between different States and all the component parts of that intercourse.'" Id. (quoting Dahnke-Walker Co. v. Bondurant, 257 U.S. 282, 290 (1921)). "Advertising that affects interstate commerce and solicitation of sales across state lines or between citizens of the United States and citizens and subjects of a foreign nation is therefore commerce within the meaning of the Lanham Act." Id.

The Harrows and the Bottle Club argue the Amended Complaint fails to plead that their business substantially affects interstate commerce. (Doc. # 41 at 7-9). They note that Plaintiffs' allegations focus on Defendants' use of social media to promote its events. Indeed, Plaintiffs allege:

> Defendants' advertisements, promotions and marketing of Eyz Wide Shut and events at Eyz Wide Shut occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions

and campaigns to target persons from different
states throughout the United States. Defendants
principally use the World Wide Web, social media
and other vehicles of interstate commerce to
advertise, market, promote, and entice or lure
membership and attendance at Eyz Wide Shut events.

(Doc. # 38 at ¶ 302).

Defendants point to a case from the Southern District of

Florida, Edmonson v. Velvet Lifestyles, LLC, No. 1:15-cv-

24442-JAL, Doc. # 77, at 14-17 (S.D. Fla. Sept. 8, 2016), in

which the district court dismissed without prejudice the

Lanham Act claims with allegations of interstate commerce

similarly focused on the defendant's social media

advertisements. That court held the plaintiff models failed

to sufficiently allege the defendant's "private members-only,

spouse-swapping sex club substantially affects interstate

commerce." Id. at 14.

But Defendants fail to mention that, after an amended

complaint was filed with greater detail regarding the

interstate commerce allegations, the Edmonson court denied

the next motion to dismiss and concluded the amended

complaint's "allegations sufficiently plead that the

misrepresented service — Defendants' private swingers' club

— affects interstate commerce" because it adequately alleged

"Defendants solicit out-of-state tourists to [the club]." <u>Id.</u> at Doc. # 100, at 15-16 (S.D. Fla. Dec. 2, 2016).

Here, too, Plaintiffs allege that Defendants use the internet and social media to advertise their events and entice out-of-state individuals to attend those events or become members of the club. (Doc. # 38 at ¶¶ 12, 302). Such use of the internet to draw individuals to club events or to purchase memberships qualifies as use in interstate commerce. <u>See</u> <u>907</u> <u>Whitehead St., Inc. v. Sec'y of U.S. Dep't of Agric.</u>, 701 F.3d 1345, 1351 (11th Cir. 2012)("[I]t is well-settled that, when local businesses solicit out-of-state tourists, they engage in activity affecting interstate commerce.").

Regarding the Harrows' argument about individual liability for the Lanham Act claims, the Eleventh Circuit has explained: "'Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act' if, as a business entity's agent, an individual 'actively caused the infringement, as a moving, conscious force.'" <u>ADT LLC v.</u> <u>Alarm Prot. Tech. Fla., LLC</u>, 646 F. App'x 781, 787-88 (11th Cir. 2016)(quoting <u>Chanel, Inc. v. Italian Activewear of</u> <u>Fla., Inc.</u>, 931 F.2d 1472, 1477-78 (11th Cir. 1991)). "Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the

infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." <u>Babbit Elecs., Inc. v. Dynascan Corp.</u>, 38 F.3d 1161, 1184 (11th Cir. 1994).

The Harrows have not made any arguments under this standard, instead citing only to Florida cases regarding Florida causes of action. (Doc. # 41 at 3-6). Therefore, the Harrows have failed to persuade the Court that individual liability is inappropriate for the Lanham Act claims, especially in light of Plaintiffs' allegations that the Harrows had authority over "decisions relating to Eyz Wide Shut's promotional, advertising, marketing and endorsement activities" and were the "moving force in the decision to engage in the infringing acts." (Doc. # 38 at ¶¶ 46, 49, 51). The Court will address the Harrows' individual liability for the state claims in another section.

### 2.   **False Endorsement**

To prevail on a claim of trademark infringement, a plaintiff "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." <u>Suntree Techs., Inc. v. Ecosense Int'l, Inc.</u>, 693 F.3d 1338,

1346 (11th Cir. 2012)(citation omitted); see also Univ. of
Ala. Bd. of Trs. v. New Life Art, Inc., 683 F.3d 1266, 1278
(11th Cir. 2012)("[W]e have never treated false endorsement
and trademark infringement claims as distinct under the
Lanham Act." (citation omitted)).

> To satisfy the first element of § 43(a) — proof of
> a valid trademark — a plaintiff need not have a
> registered mark. . . . "[T]he use of another's
> unregistered, i.e., common law, trademark can
> constitute a violation of § 43(a) where the alleged
> unregistered trademarks used by the plaintiff are
> so associated with its goods that the use of the
> same or similar marks by another company
> constitutes a false representation that its goods
> came from the same source."

Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010)
(citation omitted).

The Eleventh Circuit recognizes four categories of
distinctiveness:

> "(1) generic — marks that suggest the basic nature
> of the product or service; (2) descriptive — marks
> that identify the characteristic or quality of a
> product or service; (3) suggestive — marks that
> suggest characteristics of the product or service
> and require an effort of the imagination by the
> consumer in order to be understood as descriptive;
> and (4) arbitrary or fanciful — marks that bear no
> relationship to the product or service, and the
> strongest category of trademarks."

Id. at 774 (quoting Gift of Learning Found, Inc. v. TGC, Inc.,
329 F.3d 792, 797-98 (11th Cir. 2003)). The third and fourth

categories are distinctive enough to receive protection, the second can be, but the first is generally not enough. Id.

Defendants challenge only the first element of the Plaintiffs' false endorsement claims. (Doc. # 41 at 12-13; Doc. # 42 at 9). The Harrows and the Bottle Club assert the Plaintiffs' images are not protectable marks: "Plaintiffs have not and cannot allege anything about the photographs that distinguish or identify a specific source of goods" and "the images and likenesses of the models are not protectable as a trademark because they do not perform the trademark function of designation." (Doc. # 41 at 13; Doc. # 42 at 9). According to Defendants, Plaintiffs seek to be declared "as walking, talking trademarks." (Doc. # 41 at 13). Defendants rely on ETW Corp. v. Jierh Pub., Inc., 332 F.3d 915 (6th Cir. 2003), for the proposition that, "as a general rule, a person's image or likeness cannot function as a trademark." Id. at 922. But, unlike the plaintiff in ETW Corp., Plaintiffs are not asserting they have trademark rights in every image of themselves; rather, as a basis for their false endorsement claims, Plaintiffs point to specific photographs Defendants used without permission and which allegedly confused viewers about Plaintiffs' association with Eyz Wide Shut.

Furthermore, in discussing the false endorsement claim, the ETW Corp. court also wrote: "Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product." ETW Corp., 332 F.3d at 925. "[T]he 'mark' at issue is the plaintiff's identity." Id. at 926 (quoting Landham v. Lewis Galoob Toys, Inc., 227 F.3d 619, 626 (6th Cir. 2000)); see also Parks v. La Face Records, 329 F.3d 437, 447 (6th Cir. 2003)("[C]ourts routinely recognize a property right in celebrity identity akin to that of a trademark holder under § 43(a)."); White v. Samsung Elecs. Am., Inc., 971 F.2d 1395, 1400 (9th Cir. 1992)("In cases involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona."). And at least one district court has held that the "Lanham Act itself does not have a requirement that a plaintiff is a celebrity." Arnold v. Treadwell, 642 F. Supp. 2d 723, 735 (E.D. Mich. 2009). Rather, the Lanham Act "is designed to protect reasonable commercial interests in marks, including identities." Id.

Plaintiffs argue their images and likenesses are protectable marks with the requisite level of distinctiveness: "Plaintiffs' images (in this case their

17

actual identities) are, by definition, inherently distinctive or, by virtue of the Plaintiffs using their images (identities) to build a brand around themselves, have acquired a distinctiveness through secondary meaning." (Doc. # 44 at 17). Furthermore, Plaintiffs argue their images and likenesses do serve a designating function because "each Plaintiff's persona is inseparable from her brand [such] that the use of the same or similar images and likeness by Defendants constitutes a false representation by Defendants that their good or services, i.e. swinger activities, come from the source of Plaintiff's brand." (Id.). Plaintiffs all have utilized their images and likenesses for commercial purposes, as shown by their modeling careers described in the Amended Complaint.

The Court finds that Plaintiffs have alleged sufficient facts to state a plausible claim for relief. Plaintiffs allege the marks infringed upon were their own images or likenesses and, to show the degree of protection warranted for those marks, they allege their extensive work history in the modeling industry and their numbers of followers on social media. (Doc. # 38 at ¶¶ 69, 80, 91, 102, 113, 124, 135, 146, 157, 168, 179, 191, 202, 213, 224, 235, 246, 257, 268, 279). Additionally, Plaintiffs allege that many use the same

methods of advertising, social media, as Defendants. (Id. at ¶¶ 72, 83, 94, 105, 116, 127, 138, 149, 160, 171, 183, 194, 205, 216, 227, 238, 249, 260, 271, 282). Plaintiffs allege that their images and likenesses are inextricably associated with their personal "brands," and that the use of their images by Defendants has led to actual consumer confusion about Plaintiffs' association with Eyz Wide Shut. (Id. at ¶¶ 59, 62-63, 301).

Taken as a whole, Plaintiffs have alleged enough to survive the motion to dismiss stage. See Krupa v. Platinum Plus, LLC, No. 8:16-cv-3189-T-33MAP, 2017 WL 1050222, at *6 (M.D. Fla. Mar. 20, 2017)(denying motion to dismiss false endorsement claim where plaintiff models had substantial modeling careers, social media followings, and used social media to advertise). Defendants are free to argue at summary judgment or trial that Plaintiffs have not proved all the elements of their claims.

### B.   State Law Claims

The Harrows argue that the state law claims should be dismissed for failure to plead a basis for their individual liability. (Doc. # 41 at 3-6). The alleged acts were committed in the course and scope of the Harrows' employment as officers or directors of the corporate entity Defendants. And the

Harrows argue Plaintiffs failed to sufficiently allege why the Harrows should be personally liable for those acts. The Court disagrees.

"A corporate officer or employee is not liable for the torts of the company simply because of the person's position with the company." Vesta Const. & Design, L.L.C. v. Lotspeich & Assocs., Inc., 974 So.2d 1176, 1180 (Fla. 5th DCA 2008). But "'officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment.'" Id. (quoting White v. Wal-Mart Stores, Inc., 918 So.2d 357, 358 (Fla. 1st DCA 2005)).

Plaintiffs allege the Harrows "personally participated in the decision making of the creation of the subject advertisements that were published on Defendants' website and social media pages and actually authorized the acts of false advertising and image misappropriation for commercial benefit." (Id. at ¶¶ 45, 48). Therefore, Plaintiffs have sufficiently pled a basis for the Harrows' individual liability for the state law claims. See Burciaga v. Gold Club Tampa, Inc., No. 8:16-cv-790-T-27JSS, Doc. # 35, at 14 (M.D. Fla. Dec. 28, 2016)("Plaintiffs sufficiently allege that Tomkovich individually participated in conduct supporting the

20

remaining state law claims. Accordingly, these claims against Tomkovich will not be dismissed.").

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants Susan and Andrew Harrow's Motion to Dismiss First Amended Complaint (Doc. # 41) is **DENIED.**

(2)   Defendant Bottle Club, LLC's Motion to Dismiss Counts I and VIII (Doc. # 42) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 14th day of July, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE