UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMBER LANCASTER, BRITTANY
CRIPLIVER, BROOKE TAYLOR
JOHNSON, CIELO JEAN GIBSON, CORA
SKINNER, GEMMA LEE FARRELL,
HEATHER RAE YOUNG, IRINA
VORONINA, JESSE GOLDEN, JESSA
HINTON, JOANNA KRUPA, KATARINA
VAN DERHAM, MAYSA QUY, PAOLA
CANAS, SANDRA VALENCIA, SARA
UNDERWOOD, TIFFANY SELBY,
TIFFANY TOTH, VIDA GUERRA, and
KIM COZZENS,

    Plaintiffs,

v.                                         Case No: 8:17-cv-634-T-33JSS

ANDREW HARROW, SUSAN HARROW,
EYES WIDE SHUT, LLC, BYOB CLUB,
INC., and THE BOTTLE CLUB, LLC,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiffs' Petition for Ex Parte Temporary Restraining Order With Asset Freeze and Motion to Disqualify M. Sean Moyles and Defendants' Bankruptcy Attorney As Counsel for All Defendants ("Motion") (Dkt. 118), and Defendants' response in opposition (Dkt. 137). The presiding district court judge denied Plaintiffs' request for a temporary restraining order and referred the motions for preliminary injunction and to disqualify counsel to the undersigned to conduct an evidentiary hearing and enter a report and recommendation. (Dkt. 120.) On February 8, 2018, the Court held an evidentiary hearing on the Motion, after which the parties filed post-evidentiary hearing briefs. (Dkts. 151, 152). For the reasons that follow, it is recommended that the Motion be denied.

**INTRODUCTION**

Plaintiff filed the Motion as a result of a conversation between Defendant Andrew Harrow and Plaintiffs' attorney Ludmila Khomiak which took place after Mr. Harrow's January 4, 2018 deposition. Ms. Khomiak avers that, after Mr. Harrow's deposition concluded, Mr. Harrow "informed [her] in the presence of his attorney, M. Sean Moyles, Esq., and the court reporter, Yvonne Corrigan, that he has retained a bankruptcy attorney for the purpose of bankrupting all the Defendants and making sure that the Plaintiffs 'do not receive any money out of this lawsuit.'" (Dkt. 118-1.) She also avers that Mr. Harrow informed her "that he [h]as already moved all assets out of the Defendants' bank accounts and hid them and the reason why he believes the Plaintiffs would not be able to 'go after' him, his wife or the remainder of the Defendants is because he has done this before in another matter where a judgment was entered against one of his companies and he was able to successfully hide the assets and file for bankruptcy." (*Id.*) Finally, she avers that Mr. Harrow stated that his bankruptcy attorney would attend the (now-canceled) January 19, 2018 mediation (Dkts. 123, 123), to make sure that Plaintiffs "'do not get anything.'" (*Id.*)

Based on Mr. Harrow's statements, Plaintiffs argue that Mr. Moyles and Defendants' (unnamed) bankruptcy attorney must be disqualified as Defendants' counsel because "they are witnesses in this matter and may also have direct knowledge of the fraudulent transfer of assets." (Dkt. 118 at 3.) Plaintiffs also seek an order freezing Defendants' assets, and assets of any affiliated companies, to prevent further transfers until it can be determined whether assets were transferred and, if so, where they were transferred. (*Id.*)

In response to the Motion, Mr. Moyles avers that he witnessed the conversation and heard Mr. Harrow tell Ms. Khomiak that he was considering filing for bankruptcy and had met with bankruptcy counsel. Mr. Moyles further avers, however, that he did not hear Mr. Harrow make

any of the other comments Plaintiffs' counsel attributes to him, including that Mr. Harrow had moved or hidden Defendants' assets. (Dkt. 136-1 ¶¶ 3, 5.) Accordingly, Defendants contend that there is no factual basis for Plaintiffs' request to freeze Defendants' assets and disqualify their counsel. (Dkt. 137 at 3.)

## FINDINGS OF FACT

At the evidentiary hearing, Ms. Khomiak's testimony was consistent with her declaration. She testified that after Mr. Harrow's deposition, in the presence of Mr. Moyles and the court reporter, Mr. Harrow told her that he was not making a threat, but that he had contacted a bankruptcy attorney who will be present at the parties' mediation instead of Mr. Moyles. (Dkt. 149 at 10:1–11:2.) He told her that he had "already moved all of my money, all of my assets, out of the defendants' in this case bank accounts," which he had done before in other, unrelated lawsuits. (*Id.* at 11:3–11, 14:1–3.) She testified that she was shocked because Mr. Harrow's "whole intent [was] to make sure that my plaintiffs do not get any money out of this." (*Id.* at 11:20–12:1, 14:4–9, 18:4–6.) She testified that, other than Mr. Harrow's statements, Plaintiffs have no other evidence of Defendants' transferring their assets. (*Id.* at 14:10–14, 17:20–18:1, 21:9–19, 28:18–29:4.)

On cross examination, when asked if she had any reason to believe that Mr. Harrow was using Mr. Moyles's services in commission of these alleged transfers, Ms. Khomiak answered that her basis was Mr. Moyles's being present during this conversation and not interjecting. (*Id.* at 19:3–20:5.) She further testified that she had no reason to believe Mr. Harrow had used Mr. Moyles's services to transfer Defendants' assets. (*Id.* at 20:6–11.) As for the unnamed bankruptcy attorney, Ms. Khomiak testified that she had no evidence that Mr. Harrow had used or was using

this attorney's services to transfer Defendants' assets other than the statements Mr. Harrow made to her.  (*Id.* at 20:12–21:19.)

Ms. Corrigan testified that she recalled Mr. Harrow telling Ms. Khomiak that he was going to file for bankruptcy but does not recall any other statements.  (*Id.* at 39:10–25.)  Mr. Harrow testified that he told Ms. Khomiak that he had visited bankruptcy attorneys "to hopefully end the litigation" and that Plaintiffs would not get "that much, or any money" at the end of the litigation.  (*Id.* at 48:10–49:5.)  He testified that he meant that the bankruptcy court would "take over" and "handle" the case and denied that he meant that Plaintiffs would not receive a settlement.  (*Id.* at 67:21–68:11.)  Finally, he testified that no Defendant moved or hid assets or intends to file for bankruptcy.  (*Id.* at 57:18–20, 59:2–12, 60:14–21, 62:9–15.)

## ANALYSIS

### I. Disqualification of Defendants' Counsel

As the movants, Plaintiffs bear the burden to prove grounds for Defendants' counsel's disqualification.  *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003).  "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist."  *Id.*; *see Alexander v. Tandem Staffing Sols., Inc.*, 881 So. 2d 607, 608–09 (Fla. 4th DCA 2004) ("Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes.").  Courts limit disqualification to instances where the attorney's conduct violates specific Rules of Professional Conduct, unless the conduct at issue threatens "the orderly administration of justice" or deliberately challenges the court's authority, in which cases courts are given wide latitude in disqualification determinations.  *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997); *see Kleiner v. First Nat.*

*Bank of Atlanta*, 751 F.2d 1193, 1210 (11th Cir. 1985) (disqualifying an attorney who deliberately disobeyed the court's protective order where the attorney's client contacted potential class members in "attempts to manipulate the decision of class members to join or opt out of class membership").

### A.     Rule 4-3.7(a)

Plaintiffs contend that two rules of professionalism prohibit Mr. Moyles's and the unnamed bankruptcy attorney's continued representation of Defendants in this case. First, Plaintiffs argue that these attorneys must be disqualified because Plaintiffs have identified them as a trial witnesses. (Dkt. 118 at 1–2.) The Florida Rules of Professional Conduct govern the conduct of members of this Court. M.D. Fla. Local R. 2.04(d). Rule 4-3.7(a) of the Rules Regulating the Florida Bar prohibits a lawyer from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client," unless specific circumstances apply. Fla. R. of Prof'l Conduct R. 4-3.7(a). Rule 4-3.7 is "generally is not implicated when a party does not intend to call its own lawyer as a witness" because the plain language of the Rule states that the attorney is acting as a witness on the client's behalf. *Pharma Supply, Inc. v. Stein*, No. 14-80374-CIV, 2014 WL 4261011, at *5 (S.D. Fla. Aug. 28, 2014) (denying a motion to disqualify defense counsel because defendants "disclaimed any intent to call [their attorney] as a witness"); *Shaw v. Broad & Cassel*, No. 11-23689-CIV, 2012 WL 315050, at *5 (S.D. Fla. Feb. 1, 2012) ("The focus of the analysis under Rule 4–3.7 is on the prejudice to the client, not prejudice to the opposing side who may call the attorney as a witness."); *Etkin & Co. v. SBD LLC*, No. 11-21321-CIV, 2012 WL 5398966, at *3 (S.D. Fla. Nov. 5, 2012) (finding the application of Rule 4-3.7 inapplicable because the client did not intend to call its attorney as a witness).

Rule 4-3.7 disqualifies attorneys called as witnesses by *opposing* counsel "only if the attorney's testimony will be sufficiently adverse to the factual assertions or account of events offered on behalf of the client." *Pharma Supply, Inc.*, 2014 WL 4261011, at *5 (quotations omitted) (concluding movant had failed to meet this burden); *Scott v. State*, 717 So. 2d 908, 910 (Fla. 1998) (explaining that the concerns of prejudice to the opposing party and conflicts of interest implicated when an attorney testifies on his client's behalf are not implicated when the attorney is called as a witness by the opposing party); *JLIP, LLC v. Stratospheric Indus., Inc.*, No. 14-61798-CIV, 2016 WL 3944076, at *14 (S.D. Fla. Feb. 8, 2016) (denying a motion to disqualify where the client did not intend to call the attorney to testify on its behalf and where movants did "not met their burden of showing that [the attorney's] testimony would be adverse to Plaintiff"); *Alto Const. Co. v. Flagler Const. Equip., LLC*, 22 So. 3d 726, 728 (Fla. 2d DCA 2009) (reversing the trial court's disqualification of an attorney called as a witness by opposing counsel where the trial court failed to determine whether the attorney's testimony would be adverse to the client's "factual assertions or account of events").

Plaintiffs presented no evidence that Defendants intend to call Mr. Moyles or the unnamed bankruptcy attorney as witnesses at trial or that the testimony of Mr. Moyles or the unnamed bankruptcy attorney is sufficiently adverse to Defendants' version of events to require their disqualification. *JLIP, LLC*, 2016 WL 3944076, at *14; *Pharma Supply, Inc.*, 2014 WL 4261011, at *5. Accordingly, it is recommended that Plaintiffs have not met their burden of establishing grounds for disqualification under Rule 4-3.7.

**B.     Rule 4-1.16**

Next, Plaintiffs argue that Mr. Moyles and the unnamed bankruptcy attorney must be disqualified because they may have knowledge of Defendants' criminal or fraudulent activity of

transferring assets to shield the assets from Plaintiffs' collection of a potential judgment in this case. (Dkt. 118 at 1–2.)  Rule of Professional Conduct 4-1.16 requires an attorney to withdraw from representing a client when "the client persists in a course of action *involving the lawyer's services* that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud," or "the client has *used the lawyer's services* to perpetrate a crime or fraud, unless the client agrees to disclose and rectify the crime or fraud." Fla. R. of Prof'l Conduct R. 4-1.16(a)(4), (5) (emphasis added).  As explained in the Comment to this Rule, "[a] lawyer ordinarily must decline or withdraw from representation *if the client demands that the lawyer engage* in conduct that is illegal or violates the Rules of Professional Conduct or law." *Id.* at Comment to Rule 4-1.16 (emphasis added).

     Plaintiffs have failed to show a violation of Rule 4-1.16.  First, there is no evidence that Defendants engaged in a course of action that is criminal or fraudulent.  Ms. Khomiak testified that, other than Mr. Harrow's statements, Plaintiffs have no evidence that any Defendant moved or hid assets. (Dkt. 149 at 14:10–14, 17:20–18:1, 21:9–19, 28:18–29:4.)  Further, Mr. Harrow testified that, since learning of Plaintiffs' claims, no Defendant has moved or hidden assets. (*Id.* at 59:2–12, 60:14–21, 62:9–15.)  Second, Plaintiffs did not show that Defendants persisted in a criminal or fraudulent course of action involving the services of Mr. Moyles or the unnamed bankruptcy attorney or have done so in the past using these attorneys' services.  Ms. Khomiak's testimony that Mr. Moyles witnessed her conversation with Mr. Harrow without interjecting (*Id.* at 19:3–20:5), is not evidence that Defendants used Mr. Moyles's or the unnamed bankruptcy attorney's services to transfer Defendants' assets.  And Ms. Khomiak testified that she had no reason to believe and no evidence to show that Mr. Harrow was using or previously used the services of Mr. Moyles or the unnamed bankruptcy attorney to transfer Defendants' assets. (*Id.* at

20:6–21:19.) It is therefore recommended that Plaintiffs have not demonstrated grounds to disqualify Defendants' counsel and that the Motion be denied as to this request.

The Court notes, however, that Defendant's alleged threat concerning transferring assets to avoid collection of a judgment is serious and concerning. Further action may ultimately be warranted if the alleged threat is effectuated. *See In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995) ("[T]here is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith."). If warranted, Plaintiffs may renew their motion.

## II. Preliminary Injunction

### A. Federal Rule of Civil Procedure 65

A preliminary injunction may be issued where the movant shows "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). Preliminary injunctions are an "extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir.1974)).

"A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (concluding that plaintiff's request for "the equitable remedy of receiving [defendants'] profits

from counterfeiting under 15 U.S.C. § 1117," gave the district court "the authority to freeze those assets which could have been used to satisfy an equitable award of profits"); *contra Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1526–29 (11th Cir. 1994) (vacating a preliminary injunction freezing defendant's assets before trial where plaintiffs "sought only the award of monetary damages—and not equitable relief—for fraud under federal securities laws and state common law"); *Lawhon v. Mason*, 611 So. 2d 1367, 1368 (Fla. 2d DCA 1993) ("An injunction cannot be used to enforce money damages or prevent a party from disposing of assets prior to the conclusion of an action at law.").

Here, although Plaintiffs seek primarily awards of monetary damages against Defendants (Tr. 38 at 54–68), they also request equitable relief. Specifically, Plaintiffs seek (1) all remedies available under Section 540.08 of the Florida Statutes for their claim for unauthorized misappropriation of their likenesses, which includes injunctive relief, *see* § 540.08(2), Fla. Stat.; (2) imposition of a constructive trust in their claim for unjust enrichment, which is an equitable remedy, *see Quinn v. Phipps*, 113 So. 419, 422 (1927) ("A constructive trust is one raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it."); and (3) disgorgement of Defendants' profits from their allegedly unlawful acts in Counts I, II, III, VI, VII, and VIII, *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (explaining that "disgorgement is an equitable remedy," and holding that "the asset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement").

### 1. Irreparable Injury

Mr. Harrow testified that he told Ms. Khomiak that he had conferred with bankruptcy attorneys (Dkt. 149 at 48:10–24), and Ms. Corrigan testified that all she could recall Mr. Harrow

telling Ms. Khomiak was that he was going to file for bankruptcy (*Id.* at 39:10–25). Ms. Khomiak testified, however, that in addition to saying he had contacted bankruptcy counsel, Mr. Harrow told her that he had moved Defendants' assets. (*Id.* at 11:3–11, 14:1–3.) This is the evidence upon which Plaintiffs base their requests for relief. As explained below, even if this portion of Ms. Khomiak's testimony is fully credited, the evidence does not support the entry of a preliminary injunction.

First, because a preliminary injunction serves to forestall *future* violations, a party seeking a preliminary injunction must show that irreparable harm will occur in the future. *See Alabama v. U.S. Army Corps of Eng'rs.*, 424 F.3d 1117, 1133 (11th Cir. 2005) (emphasizing the injunction's purpose of preventing irreparable harm in the future). Here, Ms. Khomiak testified that Mr. Harrow stated he had already made the asset transfers, and Plaintiffs presented no evidence of imminent, future transfers. Thus, injunctive relief is not warranted. *See Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (quotations omitted) (explaining that an irreparable injury "must be neither remote nor speculative, but actual and imminent"); *Regions Bank v. Kaplan*, No. 8:16-CV-2867-T-23AAS, 2017 WL 3446914, at *3 (M.D. Fla. Aug. 11, 2017) (denying a request for an asset freeze where there was evidence of transfers occurring years earlier but "no evidence . . . [that] shows or permits reasonably inferring that the defendants intend an imminent transfer to hinder [movant's] ability to collect a future judgment"); *Ruckh, v. Salus Rehabilitation, LLC*, 8:11-cv-1303-T-23TBM (M.D. Fla. Jan. 23, 2018) (denying a request for an asset freeze where the movant "relies on the possibility that the defendants might transfer assets to hinder collection," rather than showing a likelihood of irreparable injury).

Further, Florida's Uniform Fraudulent Transfer Act "affords [Plaintiffs] a legal remedy that gravitates strongly against the prospect of an irreparable injury." *Regions Bank*, 2017 WL

3446914, at *3–5 (rejecting a request for a preliminary injunction freezing defendants' assets, reasoning that such an injunction would constitute "an impermissible 'obey-the-law' injunction"); *Ruckh*, 8:11-cv-1303-T-23TBM ("The relator contends that the defendants might transfer assets to evade the now-vacated judgments, but the relator says nothing about the Uniform Fraudulent Transfer Act, a legal remedy that permits voiding a false or fraudulent transfer."); *see N. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies," and "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). Accordingly, it is recommended that Plaintiffs' request for a preliminary injunction be denied as Plaintiffs failed to demonstrate evidence of imminent, irreparable injury.

### 2. Remaining Elements

While the Court need not analyze the remaining elements required to issue a preliminary injunction, *Dawson v. Ameritox, Ltd.*, 571 F. App'x 875, 880 (11th Cir. 2014), the Court, nevertheless, recommends that the remaining elements of the preliminary injunction analysis do not weigh in favor of issuing a preliminary injunction.

First, in support of the likelihood of their success on the merits, Plaintiffs argue that Defendants' liability for using Plaintiffs' images is "crystal clear." (Dkt. 118 at 9; Dkt. 152 at 7.) This conclusory argument is insufficient to show how Plaintiffs will prevail on their counts for violations of the Lanham Act, Florida law governing the unauthorized use of a likeness, Florida's Deceptive and Unfair Trade Practices Act, Florida's civil theft statutes, and their common law counts for unjust enrichment and conversion. (Dkt. 38.) Next, the threatened injury to Plaintiffs does not outweigh the damage freezing Defendants' assets would cause Defendants. *Ruckh*, 8:11-

cv-1303-T-23TBM (reasoning that the balancing of the equities favors against imposing the injunction because "the requested injunction inflicts a disabling injury on the defendants by restraining for at least a year the defendants' freedom to pursue and to advance the defendants' principal business"). Finally, freezing Defendants' assets when Plaintiffs presented no evidence of an imminent asset transfer does not serve the public's interest. *Contra DeMatte v. Bhd. of Indus. Workers' Health & Welfare Fund*, No. 94-1114-CIV-T-21C, 1996 WL 588920, at *2 (M.D. Fla. Aug. 13, 1996) (granting a request to freeze assets, reasoning that "[a]n injunction may further serve the public interest and the interest of Defendant's creditors by preventing a dissipation of Defendant's assets").

Accordingly, because Plaintiffs failed to present evidence warranting the imposition of a preliminary injunction freezing Defendants' assets, the Court recommends denying the Motion as to this request.

### B.     Federal Rule of Civil Procedure 64

Finally, Plaintiffs cite Federal Rule of Civil Procedure 64, which provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). (Dkt. 118 at 6.) However, Plaintiffs make no argument about what prejudgment remedy they seek or their entitlement to a prejudgment remedy. M.D. Fla. Local R. 3.01(a) (requiring all motions to "include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request"). Thus, Plaintiffs have not met their burden of establishing relief. In fact, they have made no request for relief under Rule 64.

Accordingly, it is **RECOMMENDED** that Plaintiffs' Petition for Ex Parte Temporary Restraining Order With Asset Freeze and Motion to Disqualify M. Sean Moyles and Defendants' Bankruptcy Attorney As Counsel for All Defendants (Dkt. 118) be **DENIED**.

**IT IS SO REPORTED** in Tampa, Florida, on February 21, 2018.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Virginia M. Hernandez Covington
Counsel of Record