UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMBER LANCASTER,
et al.,

       Plaintiffs,

v.                     Case No.: 8:17-cv-634-T-33JSS

THE BOTTLE CLUB, LLC d/b/a
EYZ WIDE SHUT II; EYES WIDE
SHUT, LLC d/b/a EYZ WIDE SHUT;
BYOB CLUB, INC.; ANDREW HARROW;
and SUSAN HARROW,

       Defendants.
_____/

**ORDER**

    This matter comes before the Court upon consideration of
Plaintiffs' Motion for Partial Summary Judgment (Doc. # 161)
and Defendants The Bottle Club, LLC, Eyes Wide Shut, LLC,
BYOB Club, Inc., Andrew Harrow, and Susan Harrow's Motion for
Summary Judgment (Doc. # 162), filed on February 28, 2018.
The Motions have been fully briefed. (Doc. ## 174, 186, 188,
195). For the reasons that follow, Defendants' Motion is
granted and Plaintiffs' Motion is denied.

## I.   **Background**

    This case involves the unauthorized use of models'
images on marketing materials for adult-oriented businesses.
The twenty Plaintiffs are Amber Lancaster, Brittany

1

Cripliver, Brooke Taylor Johnson, Cielo Jean Gibson, Cora Skinner, Gemma Lee Farrell, Heather Rae Young, Irina Voronina, Jesse Golden, Jessa Hinton, Joanna Krupa, Katarina Van Derham, Maysa Quy, Paola Canas, Sandra Valencia, Sara Underwood, Tiffany Selby, Tiffany Toth, Vida Guerra, and Kim Cozzens. They are all models or actresses and the unwilling subjects of some of Defendants' advertisements. (Doc. ## 161-2-161-21). All Plaintiffs make a living, or have in the past, by promoting their images "for the benefit of various clients, commercial brands, media and entertainment outlets." (Doc. # 161-2 at ¶ 4). Plaintiffs "rely on [their] professional reputation[s] to book modeling and advertising jobs," making their reputations "critical to the opportunities that [they are] offered." (Id. at ¶ 5). For that reason, each Plaintiff has "spent considerable time and energy protecting [her] image and reputation in the modeling industry, including being selective about the jobs that [she] take[s]." (Id. at ¶ 6).

Defendants are various adult-oriented business entities and the owners or managers of those entities, Andrew and Susan Harrow. BYOB Club, Inc., was created with the intent to open a "bottle club" but those plans never reached fruition — BYOB Club has never operated and has no business activity. (A.

Harrow Dep. I Doc. # 165-1 at 41:13-42:8, 44:11-45:13). The Bottle Club, LLC, does business as Eyz Wide Shut II and is a bar and nightclub for swingers. (S. Harrow Dep. Doc. # 165-3 at 16:2-24, 104:22-105:3). Susan is the owner and managing member of the Bottle Club. (Id. at 12:23-13:3, 13:17-20; A. Harrow Dep. I Doc. # 165-1 at 35:13-14). Eyes Wide Shut, LLC, does business as Eyz Wide Shut, which is a "short-stay lodging facility" — a hotel that rents by the hour for a maximum of ten hours. (S. Harrow Dep. Doc. # 165-3 at 46:6-20, 117:22-118:4, 126:24-127:17). Andrew Harrow represented that he is the managing member of Eyes Wide Shut, but Susan Harrow testified she is also a managing member. (Id. at 45:9-12, 47:8-24; A. Harrow Dep. I Doc. # 165-1 at 37:14-18). Eyz Wide Shut, the hotel, and Eyz Wide Shut II, the nightclub, are physically adjacent so that revelers at the nightclub can easily transition to the hotel. (A. Harrow Dep. I Doc. # 165-1 at 35:4-36:5, 38:23-39:3, 86:18-22; S. Harrow Dep. Doc. # 165-3 at 13:23-14:21).

The Bottle Club and Eyes Wide Shut market their events, including themed nights and drink specials, through their shared website and on social media pages on which they post flyers. (S. Harrow Dep. Doc. # 165-3 at 51:19-52:8; A. Harrow Dep. I Doc. # 165-1 at 38:23-39:3, 70:1-12). Defendants'

employee Anita Richards was the webmaster who created Defendants' website and "created all graphics and flyers for the website." (Richards Aff. Doc. # 165-4 at ¶ 2; A. Harrow Dep. I Doc. # 165-1 at 59:7-60:16, 66:10-70:20). Although Susan Harrow insists she was not involved in advertising for the club or hotel, Andrew Harrow admitted that he proofread the flyers created by Richards, to check the dates and prices listed and sometimes to demand that a prettier girl be used on the advertisement. (S. Harrow Dep. Doc. # 165-3 at 24:16-21, 51:10-18; A. Harrow Dep. I Doc. # 165-1 at 36:11-17, 67:23-68:3, 136:18-137:13; A. Harrow Dep. II Doc. # 165-2 at 279:14-280:1, 282:4-284:6). Both Andrew and Susan Harrow were aware that releases are required to use someone's image in their marketing, as they had obtained releases from individuals appearing in a photoshoot or video taken on the club's premises in the past. (S. Harrow. Dep. Doc. # 165-3 at 98:2-99:16; A. Harrow Dep. I Doc. # 165-1 at 77:23-78:17).

Each Plaintiff's image was used at least once in Defendants' advertisements, some on flyers, and others on the website. (Doc. # 161-26 at 54-152). But Plaintiffs never licensed the use of their images to Defendants. (Doc. # 161-2 at ¶¶ 13-15). Andrew Harrow acknowledged in his deposition that Defendants never contacted Plaintiffs for permission to

use their images, or paid Plaintiffs for the use of the images. (A. Harrow Dep. I Doc. # 165-1 at 98:13-18, 130:20-131:11). Rather, he averred Richards had informed him that Plaintiffs' images were procured through a royalty-free website, so no licenses or releases were necessary. (Id. at 131:16-132:3). Plaintiffs insist they would not have agreed to have their images used by Defendants because they would not want to be associated with "the swinger lifestyle." (Doc. # 161-2 at ¶ 11).

Plaintiffs initiated this action on March 16, 2017. (Doc. # 1). On June 6, 2017, Plaintiffs filed their Amended Complaint, asserting claims against Defendants for false advertising and false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), right of publicity (unauthorized misappropriation of name/likeness) under section 540.08, Fla. Stat., a common law claim for right of publicity (unauthorized misappropriation of name or likeness), Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, civil theft under sections 812.014 and 772.11, Fla. Stat., unjust enrichment, and conversion. (Doc. # 38). The Harrows and the Bottle Club moved to dismiss the Amended Complaint (Doc. ## 41-42), but the Court denied their motions on July 14, 2017.

(Doc. # 46). All Defendants subsequently filed their Answers. (Doc. ## 52, 86-87).

Discovery proceeded tensely. Each side filed various motions to compel better responses or depositions, as well as motions for orders to show cause. (Doc. ## 90-91, 103, 117, 130, 159). Plaintiffs moved to extend the expert discovery deadline based on Defendants' alleged recalcitrance in turning over a supposed membership list for the nightclub and hotel. (Doc. # 70). The Court extended Plaintiffs' expert report deadline to December 8, 2017, in light of Plaintiffs' concerns. (Doc. # 76). Plaintiffs also filed a petition for ex parte temporary restraining order with asset freeze and motion to disqualify Defendants' attorney (Doc. # 118), arguing that Andrew Harrow had admitted after his deposition that he was hiding assets and intended to file for bankruptcy to foil Plaintiffs' recovery. The motion was heard before the Honorable Julie S. Sneed, United States Magistrate Judge, and was subsequently denied. (Doc. ## 145, 154, 168).

After discovery ended, Plaintiffs moved to exclude Defendants' damages expert. (Doc. # 157). That motion was referred to Judge Sneed and subsequently granted. (Doc. ## 158, 187, 194). On March 13, 2018, Defendants moved to strike Plaintiffs' expert Martin Buncher, and the Court also

referred that motion to Judge Sneed. (Doc. ## 171-72). Judge Sneed issued a Report and Recommendation on April 5, 2018, recommending that Buncher's Supplemental Report be stricken as untimely, but the original Declaration not be stricken. (Doc. # 193). The Court adopted the Report and Recommendation on May 4, 2018, and struck Buncher's Supplemental Report but declined to strike the original Declaration. (Doc. # 200). Some of the parties have mediated — six Plaintiffs failed to appear at mediation — but reached an impasse. (Doc. # 184).

Both Plaintiffs and Defendants moved for summary judgment, at least in part, on February 28, 2018. Plaintiffs' Motion for Partial Summary Judgment (Doc. # 161) seeks summary judgment on the Lanham Act claims and the statutory and common law right of publicity claims against three Defendants only, The Bottle Club, Eyes Wide Shut, and Andrew Harrow. Defendants responded in opposition to Plaintiffs' Motion, and Plaintiffs have replied. (Doc. ## 174, 186). Defendants' Motion for Summary Judgment (Doc. # 162) seeks summary judgment on all claims. Plaintiffs, in turn, responded to that Motion, and Defendants have replied. (Doc. ## 188, 195). The Motions are ripe for review.

## II.  **Legal Standard**

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the

pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of

establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." <u>Shaw Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538–39 (5th Cir. 2004); <u>see</u> <u>also</u> <u>United States v. Oakley</u>, 744 F.2d 1553, 1555 (11th Cir. 1984)("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.")(quotation omitted).

### III. <u>Analysis</u>

Defendants argue that they are entitled to summary judgment on all of Plaintiffs' claims, while Plaintiffs assert they are entitled to summary judgment against The Bottle Club, Eyes Wide Shut, and Andrew Harrow for the Lanham Act claims and the statutory and common law right of publicity claims. The Court will address the Lanham Act and state law claims separately.

#### A. <u>Claims under the Lanham Act</u>

Under the Lanham Act,

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause
> mistake, or to deceive as to the affiliation,
> connection, or association of such person with
> another person, or as to the origin,
> sponsorship, or approval of his or her goods,
> services, or commercial activities by another
> person, or
>
> (B) in commercial advertising or promotion,
> misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her
> or another person's goods, services, or
> commercial activities,
>
> shall be liable in a civil action by any person who
> believes that he or she is or is likely to be
> damaged by such act.

15 U.S.C. § 1125(a). "Section 1125(a) thus creates two distinct bases of liability: false association [or endorsement], § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1384 (2014).

### 1. **False Advertising**

Count I of the Amended Complaint asserts a claim for false advertising. (Doc. # 38 at 51). "To succeed on their Lanham Act false advertising claim, Plaintiffs must ultimately prove 'an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations.'" <u>Gibson v. BTS N., Inc.</u>, No. 16-24548-CIV, 2018 WL 888872, at *3 (S.D. Fla. Feb. 14, 2018)(quoting

<u>Lexmark Int'l</u>, 134 S. Ct. at 1395)). To prove such an injury for a false advertising claim, a plaintiff must show: "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) [Plaintiffs have] been — or [are] likely to be — injured as a result of the false advertising." <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004).

"The first element of a false advertising claim is 'satisfied if the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading.'" <u>Osmose, Inc. v. Viance, LLC</u>, 612 F.3d 1298, 1308 (11th Cir. 2010)(quoting <u>Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.</u>, 299 F.3d 1242, 2147 (11th Cir. 2002)). "When determining whether an advertisement is literally false or misleading, courts 'must analyze the message conveyed in full context,' and 'must view the face of the statement in its entirety.'" <u>Osmose</u>, 612 F.3d at 1308 (quoting <u>Johnson & Johnson Vision Care</u>, 299 F.3d at 2147). "Statements that have an unambiguous meaning, either facially

or considered in context, may be classified as literally false." Osmose, 612 F.3d at 1309. "As the meaning of a statement becomes less clear, however, and it becomes susceptible to multiple meanings, the statement is more likely to be merely misleading." Id.

Plaintiffs insist Defendants' advertising was literally false. (Doc. # 161 at 12-13). According to Plaintiffs, "Defendants' advertisements necessarily conveyed or implied each Plaintiff's association with, endorsement of, and support for Eyz Wide Shut Swingers Club and Eyz Wide Shut Sex Hotel and the swinger lifestyle activities that were known to take place on Defendants' premises." (Id. at 12). Furthermore, Plaintiffs insist that because "Defendants altered Plaintiffs' images, superimposed them over different backgrounds, or placed the images next to other individuals with whom they have not modeled," the advertisements "are not true representations or accurate depictions of Plaintiffs or their images." (Id. at 12-13).

The Court disagrees. As another judge in this district explained in a virtually identical case, "[t]he images are not literally false just because the Defendants slightly altered the Plaintiffs' photographs to include them in the advertisements." Gibson v. Resort at Paradise Lakes, LLC,

Case No. 8:16-cv-791-T-36AAS, (Doc. # 142 at 27) (M.D. Fla. Feb. 2, 2018); see also Edmonson v. Velvet Lifestyles, LLC., Case No. 15-CV-24442, (Doc. # 174 at 14) (S.D. Fla. July 28, 2017)("[T]he Court has found no authority (and Plaintiffs have cited none) holding that the unauthorized use of a photograph to advertise a product or business constitutes a 'literally false' advertisement.").

Regarding the assertion that the advertisements necessarily imply that Plaintiffs are involved in the swinger lifestyle of Defendants, the advertisements do not identify Plaintiffs by name or claim that Plaintiffs will attend or have attended Defendants' events. "Without more, such use is not literally false." BTS N., Inc., 2018 WL 888872, at *4. Indeed, as the Edmonson court wrote,

> The mere inclusion of a photograph of an individual in an advertisement, without more, is ambiguous. It could represent that the individual endorses the product or business, that they will be attending the event being advertised, that they are sponsored by the business, that they are employed by the business, or that they have no affiliation with the product or business but permitted the use of their photograph in the advertisement.

Edmonson, Case No. 15-CV-24442, (Doc. # 174 at 14-15). Because the advertisements are ambiguous about the relationship between Plaintiffs and Defendants, the advertisements are not literally false. See Osmose, 612 F.3d at 1309 ("Statements

14

that have an unambiguous meaning, either facially or considered in context, may be classified as literally false.").

Plaintiffs alternatively argue the advertisements with their images are misleading. (Doc. # 161 at 13). The Court agrees the meaning of the advertisements featuring Plaintiffs' images are ambiguous and therefore misleading. See Osmose, 612 F.3d at 1309 (stating that a "statement is more likely to be merely misleading" when it is "susceptible to multiple meanings"). Taking the facts in the light most favorable to Plaintiffs, the advertisements could imply that Plaintiffs endorse the adult activities at Defendants' businesses or that they might be in attendance at Defendants' events.

"A plaintiff attempting to establish . . . that an advertisement is literally true but misleading, must 'present evidence of deception' in the form of consumer surveys, market research, expert testimony, or other evidence." Hickson Corp., 357 F.3d at 1261 (citation omitted). For evidence of consumer deception, Plaintiffs rely on Buncher's Declaration and Supplemental Report. (Doc. # 161 at 13-14). But the Court has stricken Buncher's Supplemental Report because it was not timely disclosed, having been turned over months after the

expert report deadline and one day before the dispositive motions deadline. (Doc. # 200). Therefore, Plaintiffs cannot rely on the consumer survey discussed in the Supplemental Report.

The original Declaration remains for consideration. In it, Buncher discusses three surveys conducted in other cases involving models' images used in advertising for swingers' resorts and gentleman's clubs. (Doc. # 171-1 at 2-8). Regarding the images actually at issue in this case, Buncher writes that he has "studied the use of models" in Defendants' advertisements. (Id. at 8). He continues:

> If given more information regarding the patrons of Defendants, I would be able to submit a final and more comprehensive report. Nonetheless, base[d] on the similarity of the advertising in question with other related advertising research I have completed in the same "swingers" industry, it is my expert opinion from this first phase of investigation that the manner of use of the models in the Defendants' advertising which I have examined will likely communicate[] to the large majority of those to whom it is exposed, that the models used are somehow affiliated with Defendants, have contracted to perform at and/or participate in events at Defendants' establishment, have been hired to promote, advertise, market or endorse its events and other activities offered at Defendants' establishment, and/or that each Plaintiff depicted in the advertisements has attended or will attend each event and has participated in or intends to participate in the activities advertised.

(Id. at 8-9).

Defendants argue the Declaration is irrelevant because it "lacks any survey, data or other information relating to the specific advertisements at issue in this case, or any resulting alleged deception." (Doc. # 162 at 9). The Court does not agree that the Buncher Declaration is irrelevant but nevertheless finds the Declaration insufficient to raise a genuine issue of material fact regarding consumer deception because Buncher did not survey actual consumers. See Resort at Paradise Lakes, LLC, Case No. 8:16-cv-791-T-36AAS, (Doc. # 142 at 29) (finding in nearly identical case that Buncher Declaration was "insufficient to satisfy Plaintiffs' burden of establishing consumer deception for the images since it heavily relies on the surveys which used images that are [not] the subject of this case" and where Buncher admitted he "require[d] more information regarding the patrons at issue [] to make a final determination").

Importantly, the Buncher Declaration relies on surveys conducted with different images used by different entities. (Doc. # 171-1). True, the images from the other surveys share similarities with those at issue here — young scantily-clad women are depicted on flyers advertising events at adult-oriented establishments. (Id.). But, here, Buncher acknowledges that his expert opinion on the relevant images

17

is based only on his "first phase of investigation" and that "more information" was required "to submit a final and more comprehensive report." (Id. at 8).

Plaintiffs have not offered other evidence of consumer deception, like statements by Eyz Wide Shut patrons or others who have viewed the advertisements that they believed Plaintiffs endorsed the swinger activities or would be present at the club or hotel. See Resort at Paradise Lakes, LLC, Case No. 8:16-cv-791-T-36AAS, (Doc. # 142 at 30) ("Plaintiffs offer no other evidence to prove actual consumer deception, i.e. statements from Paradise Lakes' residents, members, or others who viewed the advertisements conveying an expectation that the models in the advertisements endorsed the activities or would be present at resort, or some other similar evidence."). Therefore, there is insufficient evidence of consumer deception to support a false advertising claim.

Even if the advertisements have the capacity to deceive, Defendants argue Plaintiffs have not shown the deception was material to any purchasing decisions because Plaintiffs rely exclusively on the Buncher Supplemental Report. (Doc. # 174 at 17). Under the materiality element, a plaintiff must "establish that 'the defendant's deception is likely to

influence the purchasing decision.'" <u>Johnson & Johnson Vision</u> <u>Care</u>, 299 F.3d at 1250 (citation omitted). "The materiality requirement is based on the premise that not all deceptions affect consumer decisions." <u>Id.</u> Defendants are correct that Plaintiffs reference only the Buncher Supplemental Report in their Motion for Partial Summary Judgment to establish materiality. (Doc. # 161 at 14-15). Similarly, in response to Defendants' Motion, Plaintiffs argue only that the Buncher Supplemental Report should be considered to establish the false advertising claim. (Doc. # 188 at 10-13).

Again, the Supplemental Report has been stricken. And nothing in the Buncher Declaration supports that the use of Plaintiffs' images would have influenced consumers' decisions to patronize Defendants' businesses. The Declaration reports the results of the previous surveys in other cases, in which Buncher found that the majority of survey-takers "were more likely to at least consider the possibility of attending the activities at [the adult-oriented business] if the ads showed the models instead of not showing them." (Doc. # 171-1 at 5-6). But Buncher never applied those findings to the facts of this case. Although Buncher opines that he believes the images would lead individuals to believe Plaintiffs endorsed or are somehow affiliated with Defendants (Doc. # 171-1 at 8-9),

Buncher does not make any prediction as to whether the advertisements would influence viewers' decisions about attending Defendants' businesses. Therefore, Plaintiffs have also failed to demonstrate a genuine issue of material fact regarding the materiality element of their false advertising claim.

Plaintiffs have not established a prima facie case of false advertising. Summary judgment is granted for Defendants on Count I.

## 2. **False Endorsement**

Count VIII of the Amended Complaint asserts a claim for false endorsement. (Doc. # 38 at 62). To prevail on a claim of false endorsement, a plaintiff "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1346 (11th Cir. 2012)(citation omitted); see also Univ. of Ala. Bd. of Trs. v. New Life Art, Inc., 683 F.3d 1266, 1278 (11th Cir. 2012)("[W]e have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act." (citation omitted)).

Defendants do not challenge the first element, but they do challenge the second element. They contend Plaintiffs cannot prove likelihood of confusion, emphasizing that Buncher's Supplemental Report should not be considered and the Buncher Declaration "is wholly irrelevant, as it relates to three entirely separate cases." (Doc. # 162 at 11; Doc. # 174 at 18). Again, the Court has stricken the Supplemental Report and will not consider it in analyzing the likelihood of consumer confusion element.

Typically, to evaluate whether a likelihood of confusion exists, the court analyzes seven factors:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

Tana v. Dantanna's, 611 F.3d 767, 774-75 (11th Cir. 2010).

"Although likelihood of confusion is a question of fact, it may be decided as a matter of law." Id. at 775 n.7; see also Resort at Paradise Lakes, LLC, Case No. 8:16-cv-791-T-36AAS, (Doc. # 142 at 20) ("The Eleventh Circuit has routinely weighed the likelihood-of-confusion factors on summary

judgment and has affirmed summary judgment where there was little evidence of actual confusion." (citation and internal quotation marks omitted)). "The last factor, actual confusion in the consuming public, is the most persuasive evidence in assessing likelihood of confusion." Tana, 611 F.3d at 779.

Neither party has analyzed the seven Tana factors. Rather, Plaintiffs rely on the Buncher Declaration and Supplemental Report to establish that a likelihood of confusion exists without discussion of the separate factors. (Doc. # 161 at 19-20; Doc. # 188 at 13-14). Conversely, Defendants argue that the "Tana court's likelihood of confusion analysis is unnecessary in the instant case, where Plaintiffs cannot offer any evidence addressing this element" of the false endorsement claim. (Doc. # 162 at 12).

The Court finds that the Buncher Declaration is insufficient evidence of actual consumer confusion to create a genuine issue of material fact, as Buncher did not survey actual consumers. See Resort at Paradise Lakes, LLC, Case No. 8:16-cv-791-T-36AAS, (Doc. # 142 at 22) (assigning "little weight" to Buncher Declaration in nearly identical case because "Buncher did not conduct a survey using the images in this case," instead he "studied" the use of models in that case and had conducted communication surveys in similar

Lanham Act cases by models against adult resorts and clubs). "The fact that Plaintiffs produced some evidence in the form of Buncher's Declaration based on consumer surveys is insufficient to create a genuine issue of material fact on the likelihood of confusion." Id. "At most, Plaintiffs' evidence raises a possibility, as opposed to a likelihood, that consumers would be confused as to whether Plaintiffs endorsed [Defendants]." Id. at 23.

Taking all the evidence in the light most favorable to Plaintiffs, there is no genuine issue of material fact regarding the likelihood of consumer confusion. Therefore, the Court grants summary judgment for Defendants on Count VIII, the false endorsement claim.

## B.    State Law Claims

Plaintiffs' Lanham Act claims provided the sole source of federal jurisdiction in this case, as the parties do not meet the requirements of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Rather, the Court concludes that supplemental jurisdiction pursuant to 28 U.S.C. § 1367 supplies the only remaining basis for jurisdiction over the FDUTPA, civil theft, unjust enrichment, conversion and statutory and common law right of publicity claims, Counts II through VII.

"The dismissal of [a plaintiff's] underlying federal question claim does not deprive the [c]ourt of supplemental jurisdiction over the remaining state law claims." Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997). Nevertheless, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004). Counts II through VII depend on determinations of state law and "state courts, not federal courts, should be the final arbiters of state law." Ingram v. School Bd. of Miami–Dade County, 167 F. App'x 107, 108 (11th Cir. 2006).

Accordingly, because the Court grants Defendants' Motion for Summary Judgment for the Lanham Act claims, and diversity jurisdiction does not exist, the Court in its discretion declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. See Nagy v. Taylor Cty. Sch. Dist., No. 5:16-CV-70-MTT, 2017 WL 4448579, at *14 (M.D. Ga. Oct. 5, 2017)("[B]ecause Defendants are entitled to judgment as a matter of law on the federal law claims, the Court declines to exercise supplemental jurisdiction over the state law tort claims."). The state law claims, Counts II through

VII, are dismissed without prejudice. Pursuant to 28 U.S.C. § 1367(d), the statute of limitations is tolled "for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."

**IV.  Conclusion**

Plaintiffs' Lanham Act claims, Counts I and VIII, fail and summary judgment is granted for Defendants on those claims. With the federal claims disposed of before trial, the state law claims, Counts II through VII, are dismissed without prejudice so that Plaintiffs may reassert them in state court, if they wish.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendants The Bottle Club, LLC, Eyes Wide Shut, LLC, BYOB Club, Inc., Andrew Harrow, and Susan Harrow's Motion for Summary Judgment (Doc. # 162) is **GRANTED IN PART.** Summary judgment is granted on the Lanham Act false advertising and false endorsement claims, but the state law claims, Counts II to VII, are dismissed without prejudice so they can be reasserted in state court.

(2)  Plaintiffs' Motion for Partial Summary Judgment (Doc. # 161) is **DENIED.**

(3) The Clerk is directed to enter judgment on Counts I and VIII under the Lanham Act for Defendants and against Plaintiffs. Thereafter, the Clerk is directed to **CLOSE THE CASE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of May, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE